versus Village Gun Shop Incorporated et al. Council, go ahead. Good morning. Can I reserve four minutes for rebuttal? Sure. Okay, thank you. May it please the court. My clients were conclusively deprived of property interests without prior notice and without any opportunity to be heard. This happened because police officers, acting in the course of their official duties, took custody of their property and then asked a third party company, Village Vault, the defendant here, to pick that property up and store it. Now, after doing this, again, without any prior notice to my clients, that company then contacted my clients and told them that they would need to pay the fees it had already imposed if they wanted to either pick up their property or transfer it to someone else. And those fees were substantial. By the time my clients first found out about this company's involvement, the amount they would have needed to pay to either transfer that property to someone else was... You're making a due process argument right now. Is that correct? That's correct. It's a due process argument. What about the... I mean, there is the whole state actor issue that you have to deal with first. I mean, you can argue it as you wish, but that's certainly an issue. Well, I mean, Judge Lopez's point is particularly well taken because the district court granted summary judgment on the state action inquiry, which is a preliminary inquiry. Presumably, if the district court was wrong on that, we would then send it back for the court to... for further consideration, not only of state action, but of the issues that follow from it, including due process. The gun shop's not a state actor. Due process is not the concern. So it seems logical you should start with the state action inquiry. Okay. Well, no doubt I agree. Sounds unanimous then. Under governing Supreme Court decisions, notably Blum as well as Brentwood Academy, the question of state action with the private actor turns on a careful assessment of the nature of the deprivation and its connection to governmental action to determine whether or not the deprivation is fairly attributed to the actions of the state. Now, there are several different channels that have evolved over the years that describe general categories where private parties are determined to be state actors. But as the court explained in Brentwood, the determination of state action on the part of a private party is a normative judgment, and it is often the case that examples are the best teachers. Now, in the big picture, the reason we've got state action here is because the injury, the deprivation is, my clients became liable to pay these fees that they never agreed to without any notice this was going to happen. Can I ask that the key phrase you just used to me seems like without them agreeing. And it's perfectly clear that in no express way did they agree to the transfer. On the other hand, it's also perfectly clear under the statute which they knew they could have prevented the transfer by contacting the police department and designating their own preferred storage handler. And they didn't do that. So could you explain why that possibility doesn't undermine the notion that there was joint action between the government? If the case was the police department automatically transfers it to the gun dealer and there's nothing you can do about it, I get the argument. But as you said, the opposite case is if the gun owner agrees to Village Vault having the guns, then no problem. Also, no state action going the other way. We have a kind of middle case because there's not an automatic transfer and there's not a requirement of express agreement. Instead, there will be a transfer unless you opt out of the transfer. No, I'm sorry, that's not correct. Under the statute, transfer is an option on the part of the police department. They are not required to exercise it. So you are subject to a transfer unless you opt out of it. It may not take place, but you're subject to it. Police have that option if you don't step in and do something about it. Police have that option, but the fact that it may occur or that it's going to occur is never communicated to anyone until after it's already taken place and the injury becoming liable to pay so much. That's a due process point. I'm trying to isolate on the state action point. Since you can opt out of the automatic transfer, you just opt out of a transfer that you don't assent to. There can be a transfer to Village Vault that you never specifically agree to. On the other hand, the statute enables you to do something to make sure it doesn't happen. The statute enables you to do something to make sure it doesn't happen. Why doesn't that make this voluntary enough or break the chain of joint action enough such that we would say when Village Vault gets it, they get it not as a state actor, but they get it as a private actor since you, the gun owner, could have done something to stop them from getting it. Because you, the gun owner, never had any notice that this was going to happen. But you had noticed that it could happen from the statute. The statute makes clear that the police department could give it to a private gun dealer and you had time in one case a month, another case four months to do something to tell them, hey, I don't want you to ever exercise that option. I didn't give it to my friend, but she didn't do that. And I guess why doesn't that mean when it does go to the gun vault, a Village Gun Vault, that at that point Village Gun Vault is just understood as private. The reason is this. The reason is this. Because the owner never has any notice that this is going to take place. They have no reason. What they know is the police have their property. They're holding onto it. In virtually all of the procedural due process cases where someone is being deprived under color of law, there's some law that says, yeah, this company, this governmental agency, they can do it. The whole point of procedural due process is that where the owner's identity can be readily ascertained, a constructive notice from the fact that something's written down in a statute isn't enough. Well, now you're shifting ground to the due process argument, which you seem more comfortable with than the state actor argument. But I do want to reserve some time for rebuttal argument, but the reason for that is this. Because the question of state action depends on looking at what the deprivation is and how that connects to what is definitely governmental action. The deprivation here is you became liable without any action on your part. Okay, thank you. Thank you. May it please the Court. Mark Zaro, appearing for the Village Gun Shop. I'll be using five minutes of the argument to discuss the question of state actor. And Attorney Marks, on behalf of the Commonwealth, plans to argue the due process points in this matter. To go over some of the basic facts, as Your Honors have already pointed out, BGS is a private company. It's essentially a licensed gun dealer with a warehouse that's acceptable to store guns for... You know, Mr. Zaro, you've only got five minutes. Give us some credit. We know what the facts are. Yes, sir. Why isn't the gun shop a state actor? Because the gun shop had no contract or prior arrangement with the police until the police delivered or asked the gun shop to come out to pick up the weapons. They had no knowledge of this case. They had no connection with what had happened prior to this. As far as they're concerned, the police had made a lawful seizure of weapons, and they were seeking to store them. They then follow their obligations under the statute, which is to note each gun and to provide a notice to the particular owner that they have the gun, that these are the fees that they will be liable for. If something happens in between the police seizure and their taking possession, my client's taking possession of these guns, such as the owner's making arrangements for a different shop to store them or a different person to take possession of them that's a license, holds a license, then we never know about it. Yeah, but the fact of the matter is that they did pick the village gun shop, and the question, no one seems to want to talk about the doctrine behind the state action requirement. Sure. But the question here is why isn't this the kind of joint activity that can give rise to state action? Because there is no joint activity. Well, there is joint activity. Obviously the guns are confiscated by a state agency and turned over by a state agency to a private party that then stores and eventually sells them at auction. And you can look at that if you want as disjointed, but it's clear that that's one stream of activity. My real question, and I don't really have a question about that, my question is is it the kind of activity that triggers the state action doctrine under what the Supreme Court and other courts have told us about what the requirements are for that kind of joint activity? Yeah, it is not, Your Honor. It is not performing a state function. It's a warehouse essentially. Well, that's one consideration, but just on a sort of a causation almost a but-for analysis, I mean your client would not be in the position to get this business if the state had not pursued, pursuant to law, the confiscation of these guns, then finds itself in a business it doesn't want to be in, which is to have to maintain custody of the guns. It wants somebody else to do that. And so it turns routinely to an entity like your client. Why isn't there enough nexus there to apply the joint action doctrine? Well, I would say that there has to be more of a nexus. There has to be some participation by my client in the police action in some way. The cases routinely find that there's no state action when there's that distance, not just a geographical distance. What's the case you have in mind? Is it Flagg Brothers? Pardon me? What's the case you have in mind? Well, Flagg Brothers. So in Flagg Brothers they reference the fact that the woman who was evicted authorized the warehouse man to take the goods. That is the case. That's what the case says. So that didn't happen here. That did not happen here. So why doesn't that make this a different case? Well, the owners sat on their rights for a period of time, in one case 30 days, in one case about five months. So you think the opportunity makes it as if they authorized it? That's one of the factors. Is there a case that you know of under state action doctrine that suggests that an opt-out regime like that is sufficient so that the recipient that's doing the government's work is then treated as a private actor? I think it's clear from Flagg Brothers that if there's opt-in that I understand the argument. My concern is why, for purposes of joint action, it's enough to say, well, you could have done something. It would be my position. Well, I don't know of a case to answer your question. I apologize for that. Don't apologize. There may not be one. There may not be one. I tried. Thank you. Good morning, Your Honors, and may it please the Court, David Marks for the Commonwealth. I was intending to address the due process point as the amicus for the Commonwealth. But before we get there, as I think you rightly point out, if you overturn Judge Young's decision on the state actor point, the case probably should be remanded to the district court to determine the rest of the question, was there a violation of due process. So since I only have five minutes, I do want to say a few words about due process. But, again, since the state actor point is important here, I think that, Judge Barron, your point really is the crux of the issue. Because the statute gives the owners the right to tell the police to transfer their guns to another individual lawfully authorized to possess guns, then their failure to do that is essentially giving the police permission in the police-wide discretion, right? Because the statute gives the police wide discretion as to whether to transfer the guns to a private storage facility. But, nonetheless, if the owner doesn't otherwise transfer the guns, then they are essentially waiving that right, and the police, therefore, in their discretion, can transfer the guns. Why does that matter so much? Is it because the gun club only becomes involved with the state in the way we've described because of the inaction of the gun owner? Yes. Is that the relevance of the option available here? In my point of view, there are two. One is, yes, they only become involved due to the owner's inaction, and the statute gives the owner notice. You can avoid this if you do something else. Secondly, it makes the storage facility not the agent of the police, but the agent of the owner. Because all the storage facility is doing is protecting the guns during the year. The owner has the right, if they regain that right, if they regain their license, to have the guns returned to them. So the statute only interferes with the owner's possessory right. They still have an ownership right in the guns, at least for a year. But the statute does not impose any requirement on the police to store the owner's guns for that year free of charge. Rather, there is a mechanism set up in the statute to allow the owner's property to be stored, but at their expense, because it's their property that is being protected by the storage. Can you help me with one thing under the doctrine, because I understand the argument, but the joint action language is, at least superficially, somewhat in tension with the notion that there's not joint action because the private gun owner failed to act. So in the case of express voluntary agreement or consent to the transfer, it's very easy under the doctrine to say why we would say there's no joint action. Because the reason the guns are now with Village Vault wouldn't be joint action between the government and Village Vault, it would be joint action between the private actor and Village Vault. You're saying that when the private gun owner does nothing, we should sort of squint and see that when the guns go from the police department to Village Vault, that's not joint action between those two. That's really joint action between the gun owner and Village Vault. And you can see, I mean, just the difficulty I'm having is, well, why should we squint that way? Well, but first of all, that is the mechanism set up by the statute. Now, yes, of course, it's hard to say there's joint action between the owner and the gun shop, because they didn't call up and say, would you please transfer my guns to the gun shop. But that is how the statute operates. And if the gun owner makes it — Isn't there a third way to look at it? Probably yes. And that is that the question of what happens to the guns after they're seized is subject to joint action between the gun owner and the police. The gun owner has a mechanism to reclaim, has a mechanism to dictate where they're transferred to. But if the gun owner defaults in that obligation, then it's not joint action at all. It becomes he forfeits his right to participate, so it's just action by the police and transfer in deciding where to transfer. Well, yes, you could certainly look at it that way. But he also, under the statute, the owner still has the right for the entire year to have the guns transferred to someone else. But it may just be that in the meantime, the guns have been temporarily stored at a private storage facility. But with respect to the charges that are incurred in that interim period, that fact wouldn't necessarily tell us what to do, because there is a period of time where charges are immediately incurred. You can't do anything about it. That's right. The storage facility, in this case, the evidence shows the storage facility imposes a one-time $45 administrative fee, a $15 registration fee per item that's up front, and then a 50 cent per item per day storage fee. So those are the fees. There's nothing you can do about that. I mean, it's the inaction that gives rise to at least that charge. That's right. Can I just ask you about due process one? Please do. One thought, which is if the gun owner brought this suit against the police department rather than against Village Vault, what's the state's position as to whether they could have raised the same procedural due process challenge on the ground? They didn't get notice of the transfer. And the damages for not getting the notice of the transfer would be the fees that they're now trying to recoup. Would they be available to do that? Because it seems to me in the state action inquiry, since it's normative, one thing we're worried about is by using a private actor, if you effectively demolished or diminished any chance for them to bring a claim. But if, in fact, they could just bring the claim against a different defendant, that seems to me maybe relevant to how we should look at the issue. Well, I'm not sure it is relevant, Your Honor, but the answer to your question is yes, of course. They could have included as a defendant the individual police departments. Here we're talking the Tewksbury Police Department and the State Police. They didn't. And rather, originally, the Secretary of Public Safety was made a defendant. We were voluntarily dismissed from the case after Judge Young's decision. But this is the important point, I think, that your question leads to. The claim of violation of due process here flows from the police decision to turn the guns over to the storage facility. And I say in my brief, that's not a property right. Moreover, I say that the notice that the plaintiffs say they are entitled to, notice before the decision to turn the guns over, is not for the purpose of protecting a due process interest. Because there is no criteria upon which that decision is made. The statute gives the police unlimited discretion to decide whether to turn the guns over to the storage facility. And the purpose that the plaintiffs seek the notice is to avoid the transfer by making their own arrangements. And as I explain in my brief, that's not the purpose of notice under due process. Thank you. My time is up. I'll sit down. Thank you. We kept you a little bit long, so we'll just give you three minutes for the rebuttal part. Okay. Look, if the property owners received a notice that said, one week, ten days, hence, this company, Village Vault, is going to take custody of your property, and they're going to charge these terms. Or in the alternative, you can have the property transferred to your uncle with a license, or you can choose your own gun dealer. That would be a different circumstance. If that was the case, there probably wouldn't be state action here. It would probably be a situation like Flag Brothers, where the property owners effectively assented to have those terms apply. But that's not what happened here. Village Vault would have never been able to impose those fees unilaterally if the police hadn't taken custody of the property in the first place and then turned it over to them. If I sued the police, this is what they'd say. They'd say, Mr. Jensen's points about procedural due process and fees and losing title to the property, being additional deprivations that require protection, that may be right, but we didn't cause those violations. Village Vault could have on their own sent a notice. Village Vault could have simply taken custody from us, sent out a notice, and said we're not going to charge fees until you've had time to get this notice and do something because otherwise we're just going to be unilaterally imposing a deprivation on you. So from our perspective, we did not cause them to violate the due process clause. They could have conducted their business in a way that would not have violated it. I don't think the police are even proper defendants in the case. Characterizing Flagbrothers, I think this is important, a Third Circuit decision, Chrysler v. Fetters, 670 S. 2nd, 1316. The critical aspect of Flagbrothers is, quoting, no state official performed any function in the procedure by which Flagbrothers affected its control over the gutter's property. That's not the case here. The company got the property because the police called them up and gave them the opportunity to take it. They took that opportunity, and they also took the opportunity to simply unilaterally impose fees, and fees that were so high that my clients couldn't afford to pay it. Arguably, it might not have even been rational to pay it, certainly for Robert Crampton. The amount that they ultimately got for his guns was, I believe, $30 more than the amount that they demanded he pay in the first notice to simply transfer him to someone else. It's a case where the deprivation traces directly to the actions of the government. I think that's the most important factor. One thing we have not talked about, but that should be pointed to, is, especially given the fact that analogous factual situations are particularly important in the determination of state action. We have all these towing cases we've cited. Those are basically indistinguishable. The police take custody of property pursuant to law. They turn it over to a private company. The private company, also acting pursuant to law, starts imposing fees. The courts have been nearly uniform in finding that to be state action. Thank you.